Madden v. State 










[WITHDRAWN 11-22-95]





IN THE
TENTH COURT OF APPEALS
 

No. 10-94-142-CR

        ROLAND JEROME MADDEN,
                                                                                       Appellant
        v.

        THE STATE OF TEXAS,
                                                                                       Appellee
 

From the Criminal District Court
Dallas County, Texas
Trial Court # F93-41793-KH
                                                                                                    

O P I N I O N
                                                                                                    

          A jury convicted the appellant, Roland Jerome Madden, of aggravated assault, enhanced
by two prior convictions, and assessed punishment at life in prison. Tex. Penal Code Ann. §
22.02 (Vernon Supp. 1995). Madden raises nine points of error on appeal. For the following
reasons, we will affirm.
          On the evening of April 17, 1993, Antrum Donell and Damon Jerome Bell were visiting
Bell's girlfriend, Kim, at her apartment. Bell had brought a neighbor's dog for Kim to play with.


 
Madden and Kim's sister, Kasandra arrived some time thereafter with their four-month-old baby. 
At trial, Bell testified that Madden became angry because he was apparently concerned about the
safety of his baby around the animal. However, there was some evidence that the dog was not
even in the same room as the baby. Bell then told Madden that he would take the dog home. 
          Madden and Kasandra went outside where they began to argue. Promptly thereafter, Bell
and Donell left the apartment to take the dog back home, and Kasandra went back inside. As Bell
headed to his car, Madden and Donell began to argue with each other. Bell walked over to the
two men and explained to Madden that he was not trying to put the baby in any danger and that
they were taking the dog home. There was testimony that Donell and Bell both tried to calm
Madden down. Madden then asked Donell, "What's up?," which according to the testimony is
slang basically for, "Do you want to fight?" According to the record, Donell and Madden both
repeated the phrase to each other. Bell testified that he then brought Donell over to his car to calm
the situation down so they could leave. As Bell and Donell began to walk to their respective cars
to leave, they heard Madden say,"What's up now?" Donell and Bell turned around and saw that
Madden had pulled a gun out. Madden then fired three or four shots at Donell, hitting him once
in the left hip. Madden then fled the scene in his car. Bell yelled for someone to call 911,
because Donell was bleeding heavily and beginning to lose consciousness. When the police
arrived, Bell accompanied the officers to show them where Madden lived. When they returned
to Kim's apartment, Madden telephoned the apartment and Bell picked up the phone. He motioned
for Officer Park of the Dallas Police Department to pick up the other line so he could listen to the
conversation. According to Park's testimony, Madden stated that Donell "deserved what he got." 
He also said that he was leaving Texas and that "if any police tried to stop him he would kill 'em." 
Madden was subsequently indicted for aggravated assault and sentenced to life imprisonment.
          In his first three points of error, Madden contends that the failure of the trial judge, Janice
Warder, to recuse herself sua sponte violated his due process rights under the federal constitution
and his due course of law rights under the state constitution. U.S. Const. amend. V; Tex.
Const. art. I, § 19. Madden's arguments under these first three points of error are confusing
because he seems to argue interchangeably both that Judge Warder should have recused herself
and that she should have been disqualified. In the interest of justice, we will address both
contentions. We consider the recusal argument first.
          Madden has failed to preserve his complaint concerning recusal. Madden did not file a
motion to recuse Judge Warder at trial. Madden acknowledges that Rule 18(a) of the Texas Rules
of Civil Procedure applies, which requires a party to file a motion to recuse at least ten days
before trial begins. Tex. R. Civ. P. 18(a); See Arnold v. State, 853 S.W.2d 543, 544-45 (Tex.
Crim. App. 1993) (finding that Rule 18(a) applies in criminal proceedings). However, Madden
relies on Martin v. State, 876 S.W.2d 396, 397 (Tex. App.—Fort Worth 1994, no pet.), in
arguing that the failure to make such a motion under Rule 18(a) does not necessarily waive the
complaint. In Martin, the appellant did not discover the possible grounds for recusal of the trial
judge until well into the trial. Id. Appellant promptly made a motion to recuse, which the judge
denied on the grounds that appellant did not meet the requirements of Rule 18(a). Id. The Fort
Worth Court of Appeals reversed, holding that 18(a) does not apply in those situations where a
party cannot know the basis of recusal until such a motion is no longer timely. Id. 
          Madden claims that this holding applies in the present case. However, Madden failed to
make a motion to recuse at any time during the trial, even though he became aware of the possible
grounds for recusal at the punishment phase of the trial. Martin does not hold that error is
preserved when the motion to recuse is raised for the first time at the appellate level. Tex. R.
App. P. 52(c); Johnson v. State, 871 S.W.2d 183, 191 (Tex. Crim. App. 1993) (stating that an
argument raised for the first time on appeal is not preserved for appellate review), cert. denied, 
 U.S. , 114 S.Ct. 1579 (1994). Therefore, his recusal point is waived.
          Madden also argues that Judge Warder should be removed on disqualification grounds. 
Sections of both the Texas Constitution and the Texas Code of Criminal Procedure are relevant
to a discussion of disqualification. Article V, Section 11, of the Texas Constitution provides:
          No judge shall sit in any case wherein he may be interested, or where either of the           parties may be connected with him, either by affinity or consanguinity, within such a           degree as may be prescribed by law, or when he shall have been counsel in the case. Tex.
Const. art. V, § 11.
Article 30.01 of the Texas Code of Criminal Procedure provides:
          No judge or justice of the peace shall sit in any case where he may be the party injured,           or where he has been of counsel for the State or the accused, or where the accused or           the party injured may be connected with him by consanguinity or affinity within the third           degree.
Tex. Code Crim. Proc. Ann. art. 30.01 (Vernon 1989).
          The Court of Criminal Appeals has held that the grounds of disqualification stated in the
Texas Constitution and the Code of Criminal Procedure are exclusive. See Elam v. State, 841
S.W.2d 937, 939 (Tex. App.—Austin 1992, no pet.). These provisions have been held to be
mandatory. Gamez v. State, 737 S.W.2d 315, 318 (Tex. Crim. App. 1987). It is not necessary
that an objection be made, nor may the disqualification of a judge be waived, even by consent of
the parties. Id. This issue may be raised at any time. Id. However, the prohibitions as set out
by the Texas Constitution and article 30.01, which require the disqualification of a judge hearing
a case in which he has acted as counsel, have been construed such that the judge must have
participated in the very same case that is now before him. Id. at 319. 
          In the present case, Madden argues that Judge Warder must be disqualified because she was
also the prosecutor on one of the prior convictions used to enhance his punishment. We find that
this does not constitute sufficient grounds to disqualify Judge Warder. In the past, this court has
held that the fact a trial judge has personally prosecuted or defended a defendant in past cases does
not disqualify him from presiding over a trial where a new offense is charged. Nevarez v. State,
832 S.W.2d 82, 88 (Tex. App.—Waco 1992, pet. ref'd).
          Moreover, Madden cites a Texas Court of Criminal Appeals case, Ex parte McDonald, 469
S.W.2d 173 (Tex. Crim. App. 1971), as supporting his position. In McDonald, the defendant was
convicted of felony theft and sentenced to life imprisonment. Id. at 174. The trial judge served
as the prosecutor on one of the two prior felonies used to enhance the felony theft conviction. Id. 
The Court of Criminal Appeals overturned McDonald's sentence on grounds of disqualification. 
Id. at 175.
          Madden claims that the McDonald holding supports his position that a judge should be
disqualified if he was the prosecutor in a prior case against the defendant that is now being used
only for enhancement purposes. However, Madden has misread the facts of McDonald. The court
did not overturn the sentence in McDonald because the judge in the theft case had previously
prosecuted a case against the defendant. Id. at 174-75. Instead, the court found that one of the
prior cases was void and unavailable for purposes of enhancement, because the judge who presided
over the revocation hearing in the prior conviction had actively prosecuted the defendant in that
same case. Id. Therefore, we find that McDonald has no relevance to the present case.
          In the alternative, Madden urges this court to further expand the disqualification rules. He
argues that there should be no distinction between a judge who has participated in the case he is
presently involved in and a judge who has prosecuted a prior case that is now being used against
the defendant for enhancement purposes in the present case. He claims that the introduction of
prior convictions for the purpose of enhancing punishment plays a crucial role in the sentencing
process. He argues that when the pen packets are introduced into evidence, the judge's name
becomes part of the record. Madden states that this is highly prejudicial to the jury because it
indicates that the judge may desire them to impose a longer sentence. However, this is merely
speculation, and Madden provides no authority to support this position. In addition, this notion
goes against a jury's duty to be neutral and impartial in its decisions. See Tex. Const. art. I, §
10.
          Madden also argues that the judge may be subtly or even subconsciously influenced by his
previous position in the case. This also contradicts a judge's duty to be neutral and impartial, and
there is no evidence that a prior case would effect a judge in such a manner. See Tex. Const.
art. V, § 11.
          Moreover, the State points out that there are approximately 180 prosecutors in the Dallas
County District Attorney's Office, many of whom have left the office to be elected to judicial
offices. Many defense attorneys have also left their practices for judicial positions. If the
disqualification rule was to be extended to include prior cases, it would greatly increase the cost
and administration of justice. Hawthorne v. State, 459 S.W.2d 826, 833 (Tex. Crim. App. 1970),
cert. denied, 402 U.S. 914 (1971). 
          Madden also claims that allowing a judge to preside over a case where he prosecuted the
defendant in a previous case used for enhancement purposes violates his due process rights under
both the Texas Constitution and the United States Constitution.
          We find that Madden's constitutional arguments are without merit. He cites no cases in
support of his argument. With regard to the U.S. Constitution, Madden cites as authority only
federal cases that construe a federal statute, which provides that the judge shall disqualify himself
in any proceeding in which his impartiality might be reasonably questioned. 28 U.S.C.A. § 455(a)
(West 1993). Madden admits there is no similar state statute applicable to state court proceedings. 
In addition, Madden does not cite any applicable state cases to support his position. Therefore his
first three points are overruled.
          In his fourth and fifth points of error, Madden claims that he received ineffective assistance
of counsel under the United States and Texas Constitutions because counsel did not file a motion
to recuse the trial judge.
          The right to effective counsel is guaranteed under both the federal and state constitutions. 
U.S. Const. amend. VI; Tex. Const. art. I, § 10. The United States Supreme Court established
the federal constitutional standard for determining ineffectiveness of counsel and when it is
prejudicial in Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064 (1984). 
This test was adopted by the Texas Court of Criminal Appeals in Hernandez v. State, 726 S.W.2d
53, 57 (Tex. Crim. App. 1986). 
          An individual has a right to effective, not errorless representation. Bridge v. State, 726
S.W.2d 558, 571 (Tex. Crim. App. 1986). To prove up ineffective assistance of counsel, it must
be shown that the performance was deficient and that it prejudiced the jury. Strickland, 466 U.S.
at 687, 104 S.Ct. at 2064. In reviewing an ineffective assistance of counsel claim, it must be
shown that: (1) the alleged act or omission was outside the range of professionally competent
assistance; and (2) whether a different outcome would have occurred if counsel's alleged error had
not occurred. Hernandez, 726 S.W.2d at 54-57. In making this determination, the court must
look at counsel's representation of the defendant as a whole, and not merely at isolated errors. 
Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993). Moreover, the representation
of the defendant should be viewed from defense counsel's perspective at trial, and not with 20-20
hindsight. Phetvongkham v. State, 841 S.W.2d 928, 931 (Tex. App.—Corpus Christi 1992, pet.
ref'd) (citing Strickland, 466 U.S. at 689, 104 S.Ct. at 2065).       
          In the present case, Madden claims that he is entitled to a new trial on grounds of
ineffective assistance of counsel based solely on the fact that counsel failed to file a motion to
recuse at trial. As mentioned above, failure to file such a motion waives a party's right to raise
the issue on appeal. Here, however, there was no basis to file a motion to recuse in the first place. 
Judge Warder was fully qualified to preside over this case. The fact that Judge Warder prosecuted
a prior case used for enhancement in the present case does not present a conflict of interest. 
Moreover, the mere failure to file an appropriate pre-trial motion shall not be categorically deemed
as ineffective assistance of counsel. Martinez v. State, 824 S.W.2d 688, 690 (Tex. App.—El Paso
1992, pet. ref'd). 
          From the totality of the representation, it is clear Madden received effective assistance of
counsel. Counsel filed several pre-trial motions, extensively cross-examined each of the State's
witnesses, objected at various points in the proceedings where appropriate, moved for an
instructed verdict, and presented two witnesses on Madden's behalf. Moreover, he objected to
the jury charge on guilt-innocence and presented persuasive closing arguments at both stages of
Madden's trial. We find that Madden received more than effective representation.
          Madden also claims that article I, section 10, of the Texas Constitution should provide a
greater degree of protection to a defendant in determining what is ineffective assistance. The
Texas courts have construed the right of effective assistance of counsel in accordance with federal
law and the Sixth Amendment to the United States Constitution. Strickland, 466 U.S. at 687, 104
S.Ct. at 2064; Hernandez, 726 S.W.2d at 54-57. Madden argues that this right should be
expanded under the Texas Constitution. See Heitman v. State, 815 S.W.2d 681, 690 (Tex. Crim.
App. 1991). He argues that the particular language in article I, section 10, is more expansive than
its federal counterpart. These provisions read as follows:
           Article I, section 10, of the Texas Constitution provides: In all criminal prosecutions,           the accused shall ... have the right of being heard by ... counsel. 
Tex. Const. art. I, § 10. (emphasis added). 
          The Sixth Amendment of the United States Constitution provides: In all criminal           prosecutions, the accused shall enjoy the right ... to have assistance of counsel for his           defense. 
U.S. Const. amend VI. (emphasis added). 
          Madden claims that the right to be heard has a greater effect than merely the right to
assistance. He claims that the right to be heard contemplates an active, rather than advisory role
by trial counsel. However, Madden fails to provide any authority on this argument. The Texas
Court of Criminal Appeals has expressly adopted the Strickland test, and we find no reason to
further expand this rule. We overrule Madden's fourth and fifth points of error.
          In his sixth point of error, Madden argues that the trial court erred by admitting evidence
of an extraneous offense. A defendant must be tried for the offense with which he is charged. He
may not be tried for a collateral crime or for being a criminal generally. Tex. R. Crim. Evid.
401, 404(b); Albrecht v. State, 486 S.W.2d 97, 100-01 (Tex. Crim. App. 1972). An extraneous
offense may only be admitted if it meets a two-part test: (1) the extraneous offense must be
relevant to a material issue in the case; and (2) the probative value of the evidence must outweigh
the prejudicial effect. Montgomery v. State, 810 S.W.2d 372, 377 (Tex. Crim. App. 1991) (on
rehearing). 
          Madden complains that the trial court erred in admitting into evidence an extraneous
offense which consisted of his statement that he would shoot anyone, including the police, who
tried to stop him from leaving the state. However, we find that Madden has waived his complaint. 
 Madden successfully preserved the complaint when he objected to Damon Bell's testimony. 
However, he failed to object to the evidence when Officer Park later offered the same testimony. 
The failure of counsel to object to Park's testimony not only waived Madden's objection to that
testimony, but cured any error from the court's overruling the objection to Bell's previous
testimony. Butler v. State, 769 S.W.2d 234, 241 (Tex. Crim. App. 1989), overruled on other
grounds, Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991). A defendant must object
every time that objectionable evidence is offered. Id. Therefore, we overrule Madden's sixth
point of error.
          In his seventh and eighth points of error, Madden complains that he received ineffective
assistance of counsel under both the United States and Texas Constitutions because counsel did
not properly object to the testimony concerning Madden's telephone statements. 
          As mentioned above, to show ineffective assistance of counsel, the United States and Texas
Constitutions require that: (1) counsel's performance be deficient and not reasonably effective; and
(2) that this deficient performance prejudiced the defense. Strickland, 466 U.S. at 668, 104 S.Ct
at 2052; Hernandez, 726 S.W.2d at 54-57. A defendant must meet both prongs in order to show
ineffective assistance of counsel. Strickland, 466 U.S. at 687, 104 S.Ct at 2064. Madden claims
that counsel's failure to object to Officer Park's testimony regarding Madden's telephone
conversation was an inadmissible extraneous offense and was an error of "constitutional
magnitude" which deprived him of effective assistance of counsel. He claims that this statement
goes to an extraneous offense of making threats against a police officer.
          We must first determine if Madden's statements on the telephone qualify as an inadmissible
extraneous offense. Rule 404(b) states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character
of a person in order to show that he acted in conformity therewith. It may,
however, be admissible for other purposes, such as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or accident. 

Tex. R. Crim. Evid. 404(b).
          An extraneous offense may only be admitted if it meets a two-part test: (1) the extraneous
offense must be relevant to a material issue in the case; and (2) the probative value of the evidence
must outweigh the prejudicial effect. Montgomery, 810 S.W.2d at 377. The evidence that is
offered must be shown to be relevant apart from its tendency to make the defendant look like a
criminal. Moreover, the presumption is that the evidence is more probative than prejudicial. Lee
v. State, 866 S.W.2d 298, 303 (Tex. App.—Fort Worth 1993, pet. ref'd). Madden claims that
Officer Park's testimony that Madden said he would leave the state, and kill any police that tried
to stop him was not relevant and did not meet any of the exceptions in Rule 404(b) for allowing
extraneous offenses into evidence. Although this rule enumerates specific purposes for when
evidence is admissible, the list is not exclusive. Rogers v. State, 853 S.W.2d 29, 33 (Tex. Crim.
App. 1993). One such exception is "consciousness of guilt." In Torres v. State, 794 S.W.2d 596,
598-600 (Tex. App.—Austin 1990, no pet.), the court stated:
          A `consciousness of guilt' is perhaps one of the strongest kinds of evidence of guilt. It           is consequently a well accepted principle that any conduct on the part of a person accused           of a crime subsequent to its commission, which indicates a 'consciousness of guilt' may           be received as a circumstance tending to prove that he committed the act with which he           is charged. 
Id. at 598 (quoting 2 R. Ray, Law of Evidence § 1538, at 242 (Texas Practice 1980)).
We find that the statements admitted into testimony went to Madden's "consciousness of guilt" and
are therefore relevant. Madden's statements go to the fact that he was planning to flee prosecution
and that he would kill anyone who got in the way of his attempt to escape. 
          Madden also argues that the evidence should be excluded because its probative value is
substantially outweighed by the danger of unfair prejudice. While it is true that making threats
against the police could be considered inflammatory, this alone does not render the evidence
inadmissible. It is only when the danger of unfair prejudice substantially outweighs the probative
value of the evidence that it must be excluded. Lee v. State, 866 S.W.2d 298, 303 (Tex.
App.—Fort Worth 1993, pet. ref'd). We find that the evidence does not unduly prejudice
Madden. 
          Madden claims ineffective assistance because his counsel failed to object to Officer Park's
testimony. However, there is no ineffectiveness where such an objection would not be valid. See
Poullard v. State, 833 S.W.2d 273, 278 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). 
Therefore, we find that Madden was not denied effective assistance of counsel, and his point is
overruled.
          In his last point of error, Madden argues that the evidence of serious bodily injury to the
complainant is legally insufficient to show aggravated assault. In reviewing a claim of insufficient
evidence, the reviewing court must determine whether, after viewing the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2788-89 (1979). On review to this court, the sufficiency of the evidence must be measured against
a correct charge that corresponds to the allegations of the indictment. Moore v. State, 739 S.W.2d
347, 348 (Tex. Crim. App. 1987). In pertinent part, the indictment alleges that Madden did
"unlawfully then and there knowingly and intentionally cause serious bodily injury to another,
namely, Antrum Donell, hereinafter called complainant, by shooting said complainant with a
firearm."
          The trial court instructed the jury: 
          Now if you find from the evidence beyond a reasonable doubt ... that the defendant,           Roland Jerome Madden, did intentionally or knowingly shoot Antrum Donell with a           firearm and thereby cause serious bodily injury to Antrum Donell, as alleged in the           indictment, then you will find the defendant guilty as charged.
(Emphasis added). 
          Aggravated assault does not normally require the state to prove both that the defendant
caused serious bodily injury and that the defendant used a deadly weapon. A person can be found
guilty of the offense of aggravated assault if he commits an assault with a deadly weapon and
causes bodily injury or if he commits an assault and causes serious bodily injury. Tex. Penal
Code Ann. § 22.02. However, since the state indicted Madden in the conjunctive, the state is
required to prove up both elements. See Fisher v. State, 887 S.W.2d 49, 57 (Tex. Crim. App.
1994). Madden does not challenge the legal sufficiency of whether he used a deadly weapon, only
that the evidence that he caused the complainant serious bodily injury was legally insufficient. 
Therefore, we will look only at the sufficiency of the evidence concerning serious bodily injury.
          Serious bodily injury means bodily injury—pain, illness or impairment of the physical
condition of the body that creates a substantial risk of death or that causes death, serious
permanent disfigurement, or protracted loss or impairment of the function of any body member
or organ. Tex. Penal Code Ann. § 1.07(a)(34) (Vernon 1974). However, determining what
facts constitute a serious bodily injury can only be determined on an ad hoc basis. Moore v. State,
739 S.W.2d 347, 352 (Tex. Crim. App. 1987). The record shows that Madden shot Donell in the
left hip with a .45 caliber handgun. According to the testimony of both Donell and Bell, Donell
faded in and out of consciousness after he was wounded. Donell also testified that he was in the
hospital for a day and a half. He stated that he could not walk for three to four weeks after the
shooting, and agreed with counsel that he had suffered a protracted impairment of a bodily
member. See Coshatt v. State, 744 S.W.2d 633, 636 (Tex. App.—Dallas 1987, pet. ref'd)
(holding that damaged vertebrae and orders to stay in bed for six weeks was a protracted
impairment of a bodily member and sufficient evidence of serious bodily injury); Brown v. State,
605 S.W.2d 572, 575 (Tex. Crim. App. 1980) (holding that victim's broken nose was sufficient
evidence of serious bodily injury); Hatfield v. State, 377 S.W.2d 647, 649 (Tex. Crim. App.
1964) (holding that the injured party suffered serious bodily injury because he had a cut lip, lost
some teeth, had a stiff neck, was hospitalized for about a week, and was unable to work); Cf.
Black V. State, 637 S.W.2d 923, 926 (Tex. Crim. App. 1982) (holding that gunshot wound to
victim's thigh was insufficient evidence of serious bodily injury where he suffered no loss of use
of the limb). Moreover, Donell testified that he has permanent scar tissue where the bullet entered
and exited his body. 
          We find due to the severity of Donell's injuries, and the fact that he was unable to walk
for a month due to his gunshot wound is sufficient evidence of a protracted impairment of a bodily
member. We believe that viewed in the light most favorable to the prosecution, a rational trier
of fact could have found beyond a reasonable doubt that Donell suffered a serious bodily injury. 
Madden's last point of error is overruled. The judgment is affirmed.
  
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice
Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed October 25, 1995
Publish 
[WITHDRAWN BY ORDER 11-22-95]