BISHOP v. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-443-CR

BRIAN DAVID BISHOP APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

A jury found appellant, Brian David Bishop, guilty of murder and sentenced him to fifty-two years’ imprisonment.  In three points on appeal, Bishop complains that (1 & 2) the evidence is legally and factually insufficient to support the jury’s verdict, and (3) the trial court erred in overruling his objection to the jury charge.  We will affirm.

II. Background Facts and Procedural History

On August 22, 1999, David Brent Blair was shot and killed.  Dr. Gary L. Sisler, a deputy medical examiner for Tarrant County, performed the autopsy on Blair and testified that Blair died of a gunshot wound to the chest.

Prior to the shooting, the drunken Blair was observed yelling, cursing, and using racial slurs in the parking lot of G. Willikers, an Arlington, Texas bar.  In addition, he was observed having a verbal altercation with a group of girls.  A car was also seen quickly entering and exiting the parking lot.  Blair and the car both went down a nearby street, where Blair was spotted hitting and/or kicking the car.  Blair was then shot, and he walked or ran back to the parking lot of the bar before he died.

Bishop admitted in a written statement to driving the car that entered and exited the bar parking lot, to having had a verbal confrontation with Blair, and to firing his nine millimeter pistol two or three times at Blair.  Bishop claimed that upon reentering the street from the bar parking lot he yelled at Blair to get out of the street and that Blair cursed at him before getting out of the way.  He indicated that he then proceeded south before stopping at a red light, and that while stopped at the red light Blair entered his vehicle by inserting his upper body through the passenger window of the vehicle.  He stated that Blair was swinging both of his arms trying to hit him and his front seat passenger, Adriun Clark.  He further stated that he thought Blair had hit Adriun a couple of times, that he could smell liquor on Blair’s breath, and that he was scared of Blair. Bishop then admitted to picking up his nine millimeter pistol and firing two or three shots in Blair’s direction.  He said that he did so in an attempt to scare Blair off.  After the incident, Bishop and his three passengers went on to another club.  Later, after reading in the newspaper that Blair had died, Bishop melted his gun down in his backyard barbeque before taking it apart and scattering it piece by piece as he drove around.

Back seat passenger Eric Clark testified that after Bishop told Blair to get out of the road, Blair threw a bottle at the car but missed.  He testified that he then observed Blair running toward the passenger side of the car with something in his hand.  He stated that Blair tried to jump inside the passenger window of the car where his brother, Adriun Clark, was sitting.  However, he gave conflicting testimony about when Bishop started shooting—before or after Blair started swinging.  He testified that he was afraid, and on cross-examination that he was afraid for his brother’s life, but he didn’t state either in his written statement.

Front seat passenger Adriun Clark, testified that he did not recall Blair throwing anything at the car and that he saw no weapon in Blair’s hand.  He testified that he was sitting at the red light with his window down when Blair’s arm came “flying in the window.”  He stated that he opened the door to push Blair off but that when he pulled the door back Blair’s arm was still there.  He testified that he was afraid of Blair, but he could not say that he was in fear for his life until he heard gunshots.

The remaining passenger in the vehicle, Andreco Lott, refused to testify about the incident and was held in contempt of court.  The testimony showed that Bishop’s vehicle was not behind any other cars at the intersection, and that it was possible that Bishop could have simply driven away once the light changed.  Bishop was convicted by a jury and sentenced to 52 years’ imprisonment.  This appeal followed.

III. Sufficiency of the Evidence

In his first two points, Bishop contends that the evidence is both legally and factually insufficient to support his conviction because the evidence shows that he did not know that his actions would result in the death of Blair and because the evidence shows that he was acting in defense of himself, his passengers, and his property.  The State responds that there is sufficient evidence from which any rational trier of fact could have rejected Bishop’s defensive theories and found him guilty of murder beyond a reasonable doubt.

A. Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In determining the legal sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we “must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.”  
Matson v. State
, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

After the defendant has introduced some evidence of a defense, the State bears the burden of persuasion to disprove it.  
Zuliani v. State
, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); 
Saxton v. State
, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991).  This burden does not require the State to introduce evidence disproving the defense; rather, it requires the State to prove its case beyond a reasonable doubt.  
Zuliani
, 97 S.W.3d at 594; 
Saxton
, 804 S.W.2d at 913.  To determine sufficiency of the evidence to disprove a nonaffirmative defense, the appellate court asks the following:

whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the [defensive] issue beyond a reasonable doubt.

Saxton,
 804 S.W.2d at 914.  
See also
 
Adelman v. State
, 828 S.W.2d 418, 422-23 (Tex. Crim. App. 1992) (false imprisonment defendant urged penal code sections 9.03 & 9.63 to justify confinement of incompetent as defense).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

When a defendant challenges the factual sufficiency of the rejection of a defense (as opposed to an affirmative defense), the reviewing court employs the same standard of review articulated in 
Zuniga
 because once the defendant has met his or her burden of production of evidence as to a defense, the State bears the burden to prove appellant’s guilt of the charged offense beyond a reasonable doubt.  
Roy v. State
, Nos. 14-02-00909-CR & 14-02-00910-CR, 2004 WL 1607489, at *3-4 (Tex. App.—Houston [14th Dist.] July 20, 2004, no pet.); 
see Zuniga, 
144 S.W.3d at 482, 483, 484-85;
 Zuliani v. State
, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).  A guilty finding is an implicit rejection of the defense.  
Zuliani
, 97 S.W.3d at 594.

B. Analysis

Bishop was charged in count one of the indictment with murder
(footnote: 2) under both section 19.02(b)(1) and (2) of the Texas Penal Code, i.e., count one of the indictment charged that Bishop did (1) intentionally or knowingly cause the death of an individual, David Blair, by shooting said David Blair with a deadly weapon, to-wit: a firearm, and (2) intentionally with the intent to cause serious bodily injury to David Blair commit an act clearly dangerous to human life, namely shooting David Blair with a deadly weapon, to-wit: a firearm, which caused the death of David Blair.  
Tex. Penal Code Ann.
 § 19.02(b)(1), (2) (Vernon 2003).

However, it is a defense to prosecution if the conduct in question is justified based on self-defense.  
See 
Tex. Penal Code Ann.
 §§ 9.31, 9.32.  In that regard, Texas law provides that:

(a) [a] person is justified in using deadly force against another:

(1) if he would be justified in using force against the other under Section 9.31;
(footnote: 3)
 (2) if a reasonable person in the actor’s situation would not have retreated; and 

(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to protect himself against the other’s use or attempted use of unlawful deadly force; or 

(B) to prevent the other’s imminent commission of aggravated kidnaping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. 

Id
. § 9.32(a).

In addition, it is a defense to prosecution if the conduct in question is based on the defense of a third person.  
See id
. § 9.33.  Texas law provides that: 

[a] person is justified in using force or deadly force against another to protect a third person if:

(1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and 

(2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.  

Id
. § 9.33; 
see also 
§§ 9.31, 9.32.

Finally, it is a defense to prosecution if the conduct in question is based on defense of one’s property.  
See id
. § 9.42
. 
 Texas law provides that:

A person is justified in using deadly force against another to protect land or tangible, moveable property:  

(1) if he would be justified in using force against the other under section 9.41;
(footnote: 4) and 

(2) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to prevent the other’s imminent commission of arson, burglary, robbery, aggravated robbery, theft during the nighttime, or criminal mischief during the nighttime; or 

(B) to prevent the other who is fleeing immediately after committing burglary, robbery, aggravated robbery, or theft during the nighttime from escaping with the property; and

(3) he reasonably believes that:

(A) the land or property cannot be protected or recovered by any other means; or 

(B) the use of force other than deadly force to protect or recover the land or property would expose the actor or another to substantial risk of death or serious bodily injury. 

Id
. § 9.42; 
See also 
§ 9.41(a).

On appeal, Bishop argues first that the evidence does not show that he knew that his actions would result in Blair’s death.  Bishop argues that at the time of the incident he did not know that he had shot Blair, that Eric and Adriun Clark testified that they did not realize that Blair had been shot, and that Dr. Gary Sisler, the deputy medical examiner who performed the autopsy on Blair, testified that Blair died of a single gunshot wound. 

The specific intent to kill may be inferred from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon.  
Jones v. State
, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); 
see also Flanagan v. State
, 675 S.W.2d 734, 744 (Tex. Crim. App. 1984) (op. on reh’g).  A deadly weapon is defined as a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.  
Tex. Penal Code Ann.
 § 1.07(a)(17) (Vernon Supp. 2004-05).  A “firearm” is therefore a deadly weapon, per se.  
See Boyett v. State
, 692 S.W.2d 512, 517 (Tex. Crim. App.1985). 

Bishop admitted in his written statement that he fired his nine-millimeter handgun two or three times in the direction of Blair from the driver’s seat of his car after Blair had entered his car through the passenger window.  In addition, Dr. Sisler testified that he found powder tattooing on Blair indicating that Blair had been shot from close range.  This is evidence from which a rational jury could have concluded that Bishop intended to kill Blair.  
See Jones
, 944 S.W.2d at 647.  Moreover, firing a gun at an individual at such close range is clearly an act dangerous to human life from which a rational jury could have determined that Bishop intended to inflict serious bodily injury on Blair.  
See Forest v. State
, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999); 
see also Goodin v. State
, 726 S.W.2d 956, 959 (Tex. App.—Fort Worth 1987), 
aff’d
, 750 S.W.2d 789 (Tex. Crim. App. 1988) (finding intent to cause serious bodily injury from the appellant’s admission of having pointed firearm at deceased and pulled trigger). Thus, although Bishop presents some evidence that he did not intend to kill Blair, and that he did not know at the time of the incident that he had actually shot Blair, there exists other probative evidence from which a rational jury could have determined that Bishop intended to kill Blair or that he intended to cause Blair serious bodily injury and that he did so by committing an act clearly dangerous to human life.  
See Jones
, 944 S.W.2d at 647; 
Forest
, 989 S.W.2d at 368.

Next, Bishop argues that the evidence shows that he was acting in self-defense, in defense of his passengers, and his property.  Bishop asserts that Blair was the first aggressor,
(footnote: 5) and that he did not get out of his car and pursue Blair after he fired his gun and Blair fled.  He also asserts that he “did not speed away” from the scene, but instead asserts that he “drove away slowly and observed Blair running away.”

While there is some evidence in the record supporting Bishop’s claims of self defense, defense of third persons, and defense of his property, there is also evidence in the record from which a rational jury could have dismissed Bishop’s defensive claims.

First, there is sufficient evidence in the record from which a rational jury could have found that (1) Blair’s actions did not constitute unlawful deadly force or an attempt to use unlawful deadly force, and/or (2) Bishop’s use of deadly force was not immediately necessary to protect himself, his passengers, or his property. 
 See 
Tex. Penal Code Ann.
 §§ 9.32(a)(3), 9.33, 9.42(2).  Although in his statement to police Bishop claimed he was scared of Blair, he did not claim that he acted out of fear for his life, the lives of his passengers, or in defense of his property.  Although back seat passenger Eric Clark testified that he was afraid when Blair entered the car, and on cross-examination that he was afraid for his brother’s life, he did not so state in his written statement.  Although Eric Clark testified that Blair had something in this hand when he approached the car, his brother Adriun testified that he did not see a weapon in Blair’s hand.  Adriun Clark testified that he was not afraid for his life when Blair entered the car and started swinging—that he only feared for his life after he heard gunshots.

Second, the record reflects that Bishop never attempted to retreat despite testimony that there was no vehicle in front of him and that it might have been possible for him to have simply driven away once the light changed.
  A rational jury could have determined that a reasonable person in Bishop’s position would have first attempted to retreat. 
See id. 
§§ 9.32(a)(2), 9.33(1); 
see also Vasquez v. State
, 2 S.W.3d 355, 358 (Tex. App.—San Antonio 1999, pet. ref’d) (stating “because the evidence shows that [appellant] had access to his vehicle, a jury could have found that a reasonable person in [appellant’s] situation would have attempted to retreat”).

The evidence reflects that after the shooting Bishop left the scene, that he never called police to report the incident, and that he later melted down the weapon before disposing of it.  This evidence could have led a rational jury to discount Bishop’s defensive claims and to conclude that Bishop was guilty.  
See Lee v. State
, 866 S.W.2d 298, 302 (Tex. App.—Fort Worth 1993, pet. ref’d) 
citing Torres v. State
, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.) (indicating that consciousness of guilt constitutes one of the strongest types of evidence indicative of guilt); 
see also Martin v. State
, 151 S.W.3d 236, 244 (Tex. App.—Texarkana 2004, pet. ref’d) (stating that “in a course of action consistent only with a consciousness of guilt, [appellant] fled the scene of the shooting, burned the truck where the shooting occurred, disposed of the murder weapon, changed into clean clothes, and tried to avoid police for a couple of days”).

What weight to give contradictory testimonial evidence is within the sole province of the jury, as it turns on the evaluation of credibility and demeanor. 
Cain
, 958 S.W.2d at 408-09. 
 As the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony, a jury may believe or disbelieve all or any part of a witness’s testimony. 
 McKinny v. State
, 76 S.W.3d 463, 468-69 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The jury was free to accept or reject all or part of the defensive evidence. 
See
 
Saxton v. State
, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).  Here, the jury obviously did not believe that Bishop’s use of deadly force was justified.  We must afford deference to such a jury finding.  
See Cain
, 958 S.W.2d at 409. 

After examining all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of murder beyond a reasonable doubt and also could have found against Bishop on his claims of self-defense, defense of a third person, and defense of one’s property beyond a reasonable doubt.  Viewing all the evidence in a neutral light, favoring neither party, we conclude that the evidence supporting the verdict, taken alone, is not too weak to support the finding of guilt beyond a reasonable doubt and that the contrary evidence is not so strong that guilt cannot be proven beyond a reasonable doubt.

Accordingly, we hold that the evidence is both legally and factually sufficient to support the jury’s implicit rejection of Bishop’s defensive theories and to sustain his conviction for murder.  We overruled Bishop’s first and second points.

IV. Jury Charge Error

In his third point, Bishop contends that the trial court erred by including over his objection parole language in the jury charge at punishment. Specifically, Bishop asserts because he was ineligible to earn good conduct time toward mandatory supervision release,
(footnote: 6) inclusion of parole language in the jury charge denied him constitutional due process and due course of law.  In that regard, Bishop argues that his claim is not that there was error in the jury charge, but that the application of article 37.07, section 4(a) of the Texas Code of Criminal Procedure to 
his
 case violates due process of law and is therefore unconstitutional.  The State responds that Bishop only objected to the jury charge on the grounds that the complained-of language in the jury charge was surplusage, misleading, and confusing.  The State argues that Bishop failed to  preserve his due process/due course of law complaint.  The State also argues that the inclusion of the complained-of language in the charge is not error because it is mandated by the Texas Code of Criminal Procedure.  Finally, the State argues that the record does not show that including the complained-of language in the charge violated Bishop’s rights to due process/due course of law.

1. Standard of Review

Appellate review of error in a jury charge involves a two-step process.  
Abdnor v. State
, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error occurred.  If so, we must then evaluate whether sufficient harm resulted from the error to require reversal.  
Id.
 at 731-32.  Error preservation does not become an issue until harm is assessed because the degree of harm necessary depends on whether the defendant preserved error.  
Ngo v. State
, No. PD-0504-04,  2005 WL 600353, *3 (Tex. Crim. App.  March 16, 2005); 
Middleton v. State
, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). 

2. Analysis

Article 37.07(4)(a) of the Texas Code of Criminal Procedure requires the trial court to submit a parole instruction to the jury at the punishment stage of trial and sets out the exact instruction to be submitted. 
 See
 
Tex. Code Crim. Proc. Ann.
 art. 37.07, § 4(a) (Vernon Supp. 2004-05).  Here, the court’s instruction on parole law in the jury charge tracked the exact language of the statutory instruction. 
 See id
.
  
The parole charge is mandatory, and the trial court has no discretion to avoid the statutory requirement that it be submitted to the jury. 
 See Luquis v. State
, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002). 
Moreover, 
this court has previously held that if the mandatory parole and good conduct time instruction under article 37.07, section 4(a) is given and the defendant is ineligible for one or both, it is not error.  
Thomas v. State
, 48 S.W.3d 373, 375 (Tex. App.—Fort Worth 2001, pet. ref’d) (op. on reh’g); 
Donoho v. State
, 39 S.W.3d 324, 331-32 (Tex. App.—Fort Worth 2000, pet. ref’d) (op. on reh’g); 
Cagle v. State
, 23 S.W.3d 590, 593-94 (Tex. App.—Fort Worth 2000, pet. ref’d).  Finally, 
various constitutional challenges to the mandated parole charge have been rejected in Texas courts. 
 See, e.g., Luquis
, 72 S.W.3d at 364-66 (holding parole instruction as sanctioned in article 37.07(4)(a) does not violate the due course of law provision in article I, section 19 of the Texas Constitution or the federal constitution’s due process clause). 
 Accordingly, we hold that the trial court did not err in giving the statutorily required instruction.  Bishop’s third point is overruled.

V. Conclusion

Because we overrule Bishop’s three points on appeal, we affirm the trial court’s judgment.

DIXON W. HOLMAN

JUSTICE

PANEL B:  DAUPHINOT, HOLMAN, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b).

DELIVERED:  May 19, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Bishop was charged in count two of the indictment with manslaughter under section 19.04 of the Texas Penal Code, i.e., count two of the indictment charged that Bishop did recklessly, to-wit: by shooting a firearm at or in the direction of David Blair, cause the death of an individual, David Blair, by shooting him.  
Tex. Penal Code Ann.
 § 19.04 (Vernon 2003).  At trial, however, the State waived count two of the indictment.

3:
A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other’s use or attempted use of unlawful force.  
Tex. Penal Code Ann.
 § 9.31 (Vernon 2003). 

4:
A person in lawful possession of land or tangible, movable property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property. 
 Tex. Penal Code Ann.
 § 9.41(a) (Vernon 2003).

5:
In support of his contention that Blair was the first aggressor, Bishop points out that before his altercation with Blair, the record reflects that Blair was observed forcing a girl to his lap inside the bar, yelling, cursing, and using racial slurs in the bar parking lot, and to having an verbal altercation with a group of girls whom he called lesbians.  He also points out that there was testimony indicating that Blair wanted to fight.  Finally, Bishop points out that the medical examiner who performed the autopsy on Blair testified that the toxicology report showed that Blair’s alcohol level was twice the current legal limit and that he tested positive for marijuana and cocaine.

6:
Bishop was ineligible due to the offense for which he was convicted and because the judgment included a deadly weapon finding.