Melvin LEE, Jr., Appellant,

v.

The STATE of Texas, State.

No. 2–92–327–CR.

Court of Appeals of Texas, Fort Worth.

Oct. 27, 1993.

Discretionary Review Refused March 16, 1994.

J. Rex Barnett, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Charles M. Mallin, Asst. Chiefs of Appellate Section, Jane Ritter, Asst. Dist. Atty., Fort Worth, for appellee.

Before HILL, C.J., and WEAVER and DAY, JJ.

## OPINION

WEAVER, Justice.

Appellant, Melvin Lee, Jr., appeals from a conviction by a jury for murder. See TEX.PENAL CODE ANN. § 19.02 (Vernon 1989). The trial court assessed punishment at forty years imprisonment. We affirm.

Appellant testified during the guilt-innocence phase of trial and admitted to shooting Patricia Thomas with a .410 caliber shotgun. After he shot Ms. Thomas, appellant put her on the bed in the bedroom, covered her with a robe, and then continued to live in his small rent-house with the body for several months until he was evicted. Appellant would pour Pine Sol and ammonia on the body to keep the odor of the body down. After appellant was evicted, the landlord hired someone to clean the house, and it was at this time that the body was discovered.

■ In his first point of error, appellant contends the evidence was insufficient to establish that he used a "firearm" as alleged in the indictment. Although the State was not required to allege that Ms. Thomas was killed with a "firearm," "[t]he State is bound by its allegations in the indictment and must prove them beyond a reasonable doubt." *Doyle v. State,* 661 S.W.2d 726, 729 (Tex. Crim.App.1983). Thus, the State had the burden of proving that appellant shot Ms. Thomas with a "firearm." *See id.*

Appellant does not contend the evidence is insufficient to prove he shot Ms. Thomas with a shotgun. Appellant, himself, testified to this fact at trial. Appellant contends that since there was no testimony at trial showing that a shotgun is in fact a "firearm," the State has failed to prove the allegations included in the indictment.

Although he concedes a shotgun falls within the definition of a "firearm" in Texas Penal Code section 46.01(3), appellant contends this definition only applies to Chapter 46 offenses. *See Garrison v. State,* 726 S.W.2d 134, 138–39 (Tex.Crim.App.1987) (indicating that Chapter 46 definitions are limited to use in Chapter 46 offenses). However, the Court of Criminal Appeals has determined that the definitions in section 46.01 can be used as an aid to determine whether a particular weapon is a "deadly weapon" within the context of an affirmative finding. *See DeAnda v. State,* 769 S.W.2d 522, 524 (Tex. Crim.App.1989). We see no reason why we cannot also look to the definitions in section 46.01 as an aid to determine whether a shotgun is a "firearm."

Furthermore, the Texas Court of Criminal Appeals and the Fourteenth District have both considered and rejected arguments similar to appellant's. *See Gomez v. State,* 685 S.W.2d 333, 335–36 (Tex.Crim.App.1985) (tes-

timony that a "gun" or "revolver" was used sufficient to establish indictment allegation that a "firearm" was used); *Joseph v. State,* 681 S.W.2d 738, 739 (Tex.App.—Houston [14th Dist.] 1984, no pet.) (testimony referring to "guns" and "long-barrelled gun" sufficient to establish a "firearm" was used as alleged in the indictment). We reach a similar result.

A shotgun clearly falls within the definition of "firearm" in section 46.01, and we may look to those definitions to aid us in the present case. Additionally, there is no rational reason for us to hold that a shotgun is not a firearm in light of the Court of Criminal Appeals' decision in *Gomez,* where the Court specifically held that a revolver is a firearm. *Gomez,* 685 S.W.2d at 336. *See also Joseph,* 681 S.W.2d at 739 (holding that "[a]bsent specific indication to the contrary at trial, a gun is a firearm"). Because we hold that a shotgun is a firearm, the evidence establishing that appellant shot Ms. Thomas with a shotgun is sufficient to establish the allegations in his indictment. Point of error one is overruled.

■ In his second point of error, appellant argues the jury charge was fundamentally defective in that it lacked a definition of "firearm." The charge instructed the jury that in order to convict appellant, they had to find that he shot Ms. Thomas with a firearm. The charge instructed the jury that the term "deadly weapon" includes a firearm, but the charge did not define the term "firearm." Although no objection to the charge on these grounds was made at trial, appellant contends that the failure to define "firearm" was fundamental error, and as such, was not waived.

■ When a defendant is prosecuted for violation of a statute, it is not error for the court to refuse to define a word used in the statute when the word is used in its ordinary sense, and is easily comprehended by everyone. *Russell v. State,* 665 S.W.2d 771, 780 (Tex.Crim.App.1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984). Although "firearm" is defined in section 46.-01(3), and we are free to look to that definition to determine whether a shotgun is indeed a firearm, *see DeAnda,* 769 S.W.2d at

524, the trial court could not include this definition in its charge to the jury. *See Garrison,* 726 S.W.2d at 138–39 (stating trial court should not have used Chapter 46 definition in aggravated robbery charge).

■ Since there is no statutory definition of "firearm" which the trial court could have used, "the question of [the] trial court's obligation to define the term depends on whether the term has such a common and ordinary meaning that jurors can be fairly presumed to know and apply such meaning." *Russell,* 665 S.W.2d at 780. "Where terms used are words simple in themselves and are used in their ordinary meaning, jurors are supposed to know such common meaning and terms, and under such circumstances such common words are not necessarily to be defined in the charge to the jury." *Id.*

The term "firearm" has such a common and ordinary meaning that jurors can be presumed to know and apply such meaning. Thus, the trial court did not commit fundamental error in failing to define "firearm" in the jury charge. Point of error two is overruled.

In points of error three and four, appellant contends the trial court erred in admitting photographs and testimony regarding the decomposed condition of the body at the time of discovery. In making this argument, appellant relies on three theories.

■ Appellant first argues the photographs and testimony concerning the condition of the body at the time of discovery were not relevant to the determination of his guilt or innocence since he did not deny shooting Ms. Thomas, and neither the cause of death nor the identity of the deceased was contested. He contends this evidence was not helpful to the jury's understanding of the facts surrounding Ms. Thomas's death.

■ In reviewing the trial court's determination that evidence is relevant, we must uphold the ruling absent an abuse of discretion. *Montgomery v. State,* 810 S.W.2d 372, 390–91 (Tex.Crim.App.1990) (opinion on reh'g). "[A]s long as the trial court's ruling was at least within the zone of reasonable

disagreement, the appellate court will not intercede." *Id.* at 391.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CRIM.EVID. 401. As the Texas Court of Criminal Appeals has noted, "Rule 401 ... makes no demand that facts or issues be contested before judicially regarded as 'relevant.' " *Mayes v. State*, 816 S.W.2d 79, 84 (Tex.Crim.App.1991). Thus, the fact that appellant did not deny shooting Ms. Thomas is not controlling on the issue of whether the evidence is relevant. "Having discarded the dispute requirement, Rule 401 deems 'relevant' any evidence which influences consequential facts, i.e., facts which have something to do with the ultimate determination of guilt or innocence in a particular case." *Id.*

In the present case, evidence concerning the decomposition of the deceased's body at the time of discovery does have a bearing on the ultimate determination of guilt or innocence. A "consciousness of guilt" may be one of the strongest indicators of guilt. *Torres v. State*, 794 S.W.2d 596, 598 (Tex.App.—Austin 1990, no pet.). "It is consequently a well accepted principle that any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a 'consciousness of guilt' may be received as a circumstance tending to prove that he committed the act with which he is charged." *Id.*

Appellant chose not to call the police and report the shooting and have the body removed. He chose instead to share his small rent-house with a foul-smelling, decomposing body for a period of at least six to eight weeks, and possibly up to one year. Furthermore, appellant would pour Pine Sol and ammonia on the body three times a day in an effort to keep the smell down, and he lied to a neighbor when questioned about the smell.

The evidence concerning the condition of the body at the time of discovery and about appellant living with the body is relevant with respect to appellant's attempt to conceal the body. It is further relevant with regard to the question of his consciousness of guilt, or lack thereof, and his overall mental state.

Appellant's second argument with respect to the contested evidence is that it should have been excluded as an extraneous offense under Texas Rules of Criminal Evidence 404(b). Specifically, he contends the evidence showed the criminal offense of abuse of a corpse. The Penal Code provides that "[a] person commits an offense if, not authorized by law, he intentionally or knowingly ... conceals a human corpse knowing it to be illegally disinterred...." TEX.PENAL CODE ANN. § 42.10(a)(2) (Vernon 1989).

Appellant cites no authority indicating his treatment of the deceased's body constituted a violation of section 42.10(a)(2). Our understanding of that section is that it is limited to situations where a corpse has been illegally disinterred, meaning the corpse has been illegally exhumed after having been buried.[1] The record gives no indication the victim's body was ever buried and then illegally removed. In fact, as the State points out, the probative force of the evidence lies in the fact that the body remained unburied for so long. The photographs and testimony regarding the decomposed condition of the corpse do not constitute evidence of an extraneous offense.

Even if the contested evidence could be characterized as evidence of some extraneous offense, this alone does not make it inadmissible. Evidence of "other crimes, wrongs, or acts" which has relevance apart from character conformity is admissible. *See* TEX.R.CRIM.EVID. 404(b); *Montgomery*, 810 S.W.2d at 390–91. Whether such evidence has relevance apart from character conformity is a question for the trial court. "The trial judge must conclude that the evidence tends in logic and common experience to serve some purpose other than character conformi-

1. "Disinter" means "[t]o exhume, unbury, take out of the grave." BLACK'S LAW DICTIONARY 421 (5th ed. 1979).

ty to make the existence of a fact of consequence more or less probable than it would be without the evidence." *Montgomery*, 810 S.W.2d at 391. A ruling on this issue will be reviewed by an abuse of discretion standard. *Id.*

We cannot say with confidence that the evidence does not have a tendency to make the existence of a fact of consequence, such as appellant's consciousness of guilt, or lack thereof, more or less probable than it would otherwise be. Therefore, we hold the trial court did not abuse its discretion in admitting the evidence.

Appellant's third and final argument concerning admission of the photographs and testimony regarding the corpse is that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....

TEX.R.CRIM.EVID. 403. The trial court's ruling on admissibility of evidence under rule 403 is also reviewed by an abuse of discretion standard. *Montgomery*, 810 S.W.2d at 391.

In the present case, the contested evidence does have probative value. The evidence concerning the condition of the body at the time of discovery is directly relevant to appellant's attempt to conceal the body and his consciousness of guilt, or lack thereof. The only question is whether the probative value of this evidence is substantially outweighed by the danger of unfair prejudice.

Undoubtedly, the testimonial evidence and photographs concerning the condition of the body, and evidence that appellant lived in the house with this body for a long period of time is repulsive. However, this alone does not render the evidence inadmissible. It is only when the danger of "unfair prejudice" substantially outweighs the probative value of the evidence that it must be excluded.

A hearing was held outside the presence of the jury specifically concerning admission of photographs of the crime scene. During this hearing, the State pointed out that these photographs show a unique perspective of the crime scene, and that several other pictures of the crime scene had been eliminated. *See Long v. State*, 823 S.W.2d 259, 273 (Tex. Crim.App.1991) (upholding admission of "gory" photos which showed a "unique perspective of the crime scene" and where prosecutor had eliminated three quarters of the photos taken so as not to duplicate any evidence). The State also pointed out that it had been very careful not to pick close-ups of the body and that the photographs which were close to the body were not blown up.

The trial court considered the contested photographs and noted that there were only three pictures involved, and that they were snapshot size and not blown up. The trial court also noted that the State had to prove the identity of the deceased and the cause of death. As a result, the court did not believe the probative value of the photos was substantially outweighed by the danger of unfair prejudice.

Rule 403 "favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Long*, 823 S.W.2d at 271. *See also Montgomery*, 810 S.W.2d at 389. We have already determined that the questioned evidence is relevant. Also, we again note that a trial court's ruling on the admissibility of evidence under rule 403 is reviewed by an abuse of discretion standard, and will only be reversed if the ruling was not within the zone of reasonable disagreement. *See Montgomery*, 810 S.W.2d at 391. We conclude the trial court's ruling that the probative value of the contested evidence was not substantially outweighed by the danger of unfair prejudice was within the zone of reasonable disagreement as discussed in *Montgomery*. Therefore, we hold the trial court did not abuse its discretion. Points of error three and four are overruled.

In his fifth and final point of error, appellant contends the jury charge was fundamentally defective because it failed to include a definition of "reasonable doubt" in the application paragraph. In *Geesa v. State*, 820 S.W.2d 154, 162–63 (Tex.Crim.App.1991), the Court of Criminal Appeals adopted an instruction on reasonable doubt and required

this instruction to be submitted to the jury in all cases tried after the date of the decision.

The court's charge in the present case included a reasonable doubt instruction which is virtually identical to that in *Geesa.* However, appellant contends that the charge was defective in that this definition was not included in the application paragraph of the charge, but was put after the application paragraph.

In two recent cases, this court addressed the exact same issue appellant raises in the present case. In both *Hammons v. State,* 856 S.W.2d 797, 803-04 (Tex.App.—Fort Worth 1993, pet. filed), and *Solomon v. State,* 854 S.W.2d 265, 269-70 (Tex.App.—Fort Worth 1993, no pet.), we held that jury charges which defined reasonable doubt in the abstract portion rather than the application paragraph were not fundamentally defective. We view these cases as being dispositive of the present case. Point of error five is overruled.

The judgment of the trial court is affirmed.