COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-104-CR

LUIS ROSALIO RAMIREZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Luis Rosalio Ramirez appeals his conviction for murder.  After finding Appellant guilty of murder, the jury assessed punishment at life confinement, and the trial court sentenced him accordingly.  In three issues, Appellant contends that the evidence is legally and factually insufficient to support his conviction and that the trial court errred by admitting impermissible hearsay.  We affirm.

FACTUAL BACKGROUND

On April 29, 2002, Michelle Ramirez and her brother Luigi were home watching television when their father, Appellant, came home.  Michelle testified that her father came in, said he had a surprise for their mother, Yesenia Ramirez, and went upstairs.  A few minutes later, Luigi went upstairs to play with his toys and he heard his mother scream.  He went downstairs to tell Michelle that something was happening upstairs,  so the children went upstairs to determine what was happening.  Michelle, who had a full view of what was occurring in her parents bedroom, observed Appellant on top of Yesenia, choking her, and saw blood on the ground.  Michelle testified that she did not see anything in Appellant’s hands, but she did see his hands on Yesenia’s throat.  Appellant shut the door on Michelle’s hand, smashing her finger in the door, and he locked the door.  Appellant was still inside the bedroom, and Michelle heard her mother’s screams from inside.  Appellant ran from the bedroom, got into Yesenia’s red pickup truck, and took off very quickly.  The children tried to stop Appellant from leaving, but he pushed each of them down on his way out of the house.

Michelle returned upstairs, where Yesenia told her to call 911 and take care of Luigi.  Michelle attempted to call 911, but the phone had no dial tone, so she went next door, and her neighbors called 911.  The police and ambulance arrived at the location.  Yesenia had several puncture wounds to her chest.  The paramedics took Yesenia to the hospital, where she was pronounced dead.

Dr. Mark Andrew Krause, the deputy chief medical examiner, found eight cut and stab wounds on Yesenia’s chin, upper chest, hand, and leg and a number of bruises, some of which appeared to be several days old.  She also had an injury on her hand that Dr. Krause testified was consistent with a defensive injury.  Dr. Krause concluded that the wounds were caused by an object that had a sharp tip and at least one sharp edge and that it was relatively flat, like a knife.  He ruled Yesenia’s death as a homicide and ruled out the possibility that her death was a result of accident or suicide.

LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In his first and second issues, Appellant contends that the evidence is legally and factually insufficient to support his conviction. 

1.  Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  The standard of review is the same for direct and circumstantial evidence cases.  
Burden v. State
, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001); 
Kutzner v. State
, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case.  
Malik v. State
, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); 
Ortiz v. State
, 993 S.W.2d 892, 895 (Tex. App.—Fort Worth 1999, no pet.).  Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State’s theories of liability, and adequately describes the particular offense for which the defendant was tried.  
Gollihar v. State
, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); 
Malik, 
953 S.W.2d at 240.  The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument.  
See Curry
, 30 S.W.3d at 404.

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

2.  Applicable Law

Appellant was indicted under penal code sections 19.02(b)(1) and 19.02(b)(2), and the jury was charged accordingly.  The indictment alleged that Appellant “intentionally or knowingly cause[d] the death of an individual, namely: Yesenia Ramirez, by stabbing Yesenia Ramirez with a knife, a claw-like object, or an object unknown to the Grand Jury.”
(footnote: 2)  The indictment further alleged that Appellant, “with intent to cause serious bodily injury to an individual, namely Yesenia Ramirez, commit[ted] an act clearly dangerous to human life; to-wit: stab Yesenia Ramirez with a knife, a claw-like object, or an object unknown to the Grand Jury that caused the death of said Yesenia Ramirez.”  Under penal code sections 19.02(b)(1) and 19.02(b)(2), a person commits the offense of murder when he either (1) intentionally or knowingly causes the death of another or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another.  
Tex. Penal Code Ann.
 § 19.02(b)(1), (2) (Vernon 2003).  When the trial court's charge authorizes the jury to convict on several different theories, the verdict of guilty will be upheld if the evidence is sufficient on any one of the theories.  
Swearingen v. State
, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003).

3.  Sufficiency of the Evidence

Appellant asserts that, under 
Ellis v. State
,  mere presence during the commission of the offense is not, by itself, sufficient evidence of the person’s participation in the crime.  
See
 551 S.W.2d 407, 412 (Tex. Crim. App. 1977).  Although the mere presence of Appellant at the murder scene would not be sufficient to show that he participated in the crime, additional evidence connects him to the murder.  Michelle testified that her brother, Luigi, heard her mother screaming.  She testified that she went upstairs where she saw her father choking her mother and saw blood on the bedroom floor.  Appellant smashed Michelle’s finger in the door when he slammed the door closed and locked it.  After the door was closed, Michelle heard her mother’s screams coming from inside the bedroom.  Michelle testified that no other person was present in the house, and there was no evidence to the contrary.  Michelle testified that Appellant shoved her and her brother as he was leaving the house. Randon Riley, Appellant’s neighbor, testified that he and Darrick Todd were in Riley’s garage when Appellant arrived home on the day of the homicide. Riley testified that Appellant was home for approximately twenty minutes when Appellant got into the truck and sped away.  The fact that Appellant fled the scene indicates a consciousness of guilt, which may be one of the strongest indicators of guilt. 
 See Bigby v. State
, 892 S.W.2d 864, 884 (Tex. Crim. App. 1994) (noting that evidence of flight shows a consciousness of guilt of the crime for which the defendant is on trial), 
cert. denied
, 515 U.S. 1162 (1995); 
Lee v. State
, 866 S.W.2d 298, 302 (Tex. App.—Fort Worth 1993, pet. ref’d) (noting that a consciousness of guilt may be one of the strongest indicators of guilt).  In fact, Appellant fled the scene, and his whereabouts were unknown to police officers until he was apprehended in New Mexico on September 3, 2003, nearly fourteen months following the murder.

Riley further testified that Michelle then came running out of the house saying, “Daddy killed mommy.”  Todd corroborated Riley’s testimony, testifying that he saw Appellant arrive in the family’s red truck and later speed away in the truck, squealing his tires.  Todd testified that Michelle ran up to him and  said, “My mommy needs help; my daddy is trying to kill my mommy.”  Riley and Todd then told Mike Gregory, a Flower Mound police officer who was the first to arrive on the scene, that the victim’s husband had left in a red Ford F-150 truck.  They also informed him that the children had come running over telling them that their father was trying to kill their mother.  A bloody fingerprint that officers found at the house tied Appellant to the murder because the fingerprint matched Appellant’s right thumb print.  Using Hemaglow, a chemical that makes blood visible, officers found blood on the steering wheel, dashboard, and ignition of the red pickup truck.

Mitchell Jobe, a Flower Mound paramedic who arrived at the scene, observed several puncture wounds to Yesenia’s chest and noticed that there was blood everywhere.  Dr. Krause testified that Yesenia suffered from eight cut and stab wounds, three of which were located in her upper chest that were fairly deep wounds that would have bled profusely.  He testified that the combination of wounds would have caused Yesenia’s death “in short order.” The jury could rationally infer from this testimony that Yesenia was not injured prior to the time Appellant arrived at the house.

Appellant also asserts that the State failed to prove the elements of the crime of murder as defined in the penal code because the State did not prove his culpable mental state.  However, the intent to kill may be inferred from the nature of the injury inflicted and flight from the scene. 
 Wilkerson v. State
, 881 S.W.2d 321, 324 (Tex. Crim. App.) (holding that the jury could infer intent to kill from the manner in which the appellant handled his weapon, the amount of pressure needed to fire the weapon, the distance from which he fired, the nature of the injury he inflicted, and his flight from the scene), 
cert. denied
, 513 U.S. 1060 (1994);
 Felder v. State, 
848 S.W.2d 85, 90 (Tex. Crim. App. 1992) (holding that intent to kill was apparent by the number and location of the stab wounds inflicted upon the deceased), 
cert. denied
, 510 U.S. 829 (1993); 
Wilson v. State
, 948 S.W.2d 21, 24 (Tex. App.—Eastland 1997, pet. ref’d) (holding that the intent to kill can be inferred from the nature of the injury inflicted and flight from the scene).

Yesenia also sustained eight puncture wounds, which leads to a rational conclusion that the injuries were not accidentally inflicted.  Furthermore, Appellant fled the scene, and his whereabouts were unknown to police officers until he was apprehended in New Mexico on September 3, 2003, nearly fourteen months following Yesenia’s murder.

We hold that the evidence, when viewed in the light most favorable to the verdict, supports the jury verdict beyond a reasonable doubt; therefore, we overrule Appellant’s first issue.  Additionally, when viewed neutrally, the evidence is not so obviously weak or so greatly outweighed by contrary proof that it would not support the finding of guilty beyond a reasonable doubt.  Accordingly, we overrule Appellant’s second issue.

HEARSAY

In his third issue, Appellant contends that the trial court erred in admitting  hearsay evidence that he was in Mexico.  The State asserts that the statement concerning Appellant’s possible presence in Mexico was not hearsay because it was not offered to prove that Appellant might have been in Mexico, but rather to show why the police asked the immigration service for assistance in searching for Appellant.

We review a trial court’s admission or exclusion of evidence for an abuse of discretion.  
Rankin v. State
, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh’g); 
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  A trial court does not abuse its discretion, and we will not reverse a trial court’s ruling, unless the ruling falls outside the zone of reasonable disagreement.  
Rankin
, 974 S.W.2d at 718.  A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably.  
Montgomery
, 810 S.W.2d at 380.

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted.  
Tex. R. Evid.
 801(d).  A statement not offered to prove the truth of the matter asserted is not hearsay.  
See id.
; 
Dinkins v. State
, 894 S.W.2d 330, 347 (Tex. Crim. App.), 
cert. denied
, 516 U.S. 832 (1995); 
Davis v. State
, 169 S.W.3d 673, 675-76 (Tex. App.—Fort Worth 2005, no pet.) (allowing a police officer to testify about an anonymous tip received for the purpose of establishing how the appellant was developed as a suspect).  Where a police officer’s testimony is admitted not for the truth but to establish the course of events and circumstances leading to the arrest of the defendant, it is not hearsay.  
Reed v. State
, 794 S.W.2d 806, 809 (Tex. App.—Houston [14th Dist.] 1990, writ ref’d), 
cert. denied
, 500 U.S. 918 (1991).

Appellant complains about a statement made by Officer Sparby that the police had received information that he was in Mexico.  The detective testified that about a month after the murder, all of the leads for Appellant had been exhausted; however, the search for Appellant continued.  The record reflects that the prosecutor elicited the following testimony:

Q. The leads were dwindling, and you were doing a lot of follow-up.

A. Yes.

Q. Did you enlist the help of any other type of law enforcement agency?

A. Yes, ma’am. 

Q. And who did you ask–

A. The – sorry.  The U.S. Marshal Service and INS, which is now ICE.

Q. INS is what?

A. Immigration services.

Q. And why did you think they may be able to help you?

A. Because I had received information that the likelihood of Mr. Ramirez being in Mexico.

MR. READ [Defense Counsel]: I’m going to object to hearsay, your Honor.  She had to receive information from somewhere.  If she did, it’s hearsay.

THE COURT: I’m going to overrule the objection

MR. READ: Note my exception.

Q. [Prosecutor] Okay.  You received information about what?

A. That he was possibly in Mexico. 

Q. And that’s why you enlisted which of those two services? 

A. INS.

Here, it is clear that the State solicited the testimony that Appellant was possibly in Mexico in order to establish why the officers sought the assistance of the INS.  The testimony was not solicited in order to prove the truth of whether Appellant was in fact in Mexico.  Because the testimony was not solicited to prove the truth of the matter asserted, it was not hearsay.  
Dinkins
, 894 S.W.2d at 347-48.  Thus, the trial court did not abuse its discretion in permitting the officer to testify as to why the assistance of the INS was sought in locating Appellant.  Accordingly, we overrule Appellant’s third issue.

CONCLUSION

Having overruled Appellant’s three issues, we affirm the trial court’s judgment.

DIXON W. HOLMAN

JUSTICE

PANEL B:  LIVINGSTON, DAUPHINOT and HOLMAN, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  April 27, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
The foreman of the grand jury that returned the indictment against Appellant testified that despite a proper inquiry, the grand jury was unable to determine what specific type of instrument caused the fatal injuries to Yesenia.