COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-104-CR

 

 

LUIS ROSALIO RAMIREZ                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant Luis Rosalio Ramirez appeals his
conviction for murder.  After finding
Appellant guilty of murder, the jury assessed punishment at life confinement,
and the trial court sentenced him accordingly. 
In three issues, Appellant contends that the evidence is legally and
factually insufficient to support his conviction and that the trial court
errred by admitting impermissible hearsay. 
We affirm.

FACTUAL BACKGROUND

On April 29, 2002, Michelle
Ramirez and her brother Luigi were home watching television when their father,
Appellant, came home.  Michelle testified
that her father came in, said he had a surprise for their mother, Yesenia
Ramirez, and went upstairs.  A few
minutes later, Luigi went upstairs to play with his toys and he heard his
mother scream.  He went downstairs to
tell Michelle that something was happening upstairs,  so the children went upstairs to determine
what was happening.  Michelle, who had a
full view of what was occurring in her parents bedroom, observed Appellant on
top of Yesenia, choking her, and saw blood on the ground.  Michelle testified that she did not see
anything in Appellant=s hands, but
she did see his hands on Yesenia=s throat.  Appellant shut the
door on Michelle=s hand,
smashing her finger in the door, and he locked the door.  Appellant was still inside the bedroom, and Michelle
heard her mother=s screams
from inside.  Appellant ran from the
bedroom, got into Yesenia=s red pickup
truck, and took off very quickly.  The
children tried to stop Appellant from leaving, but he pushed each of them down
on his way out of the house.








Michelle returned upstairs,
where Yesenia told her to call 911 and take care of Luigi.  Michelle attempted to call 911, but the phone
had no dial tone, so she went next door, and her neighbors called 911.  The police and ambulance arrived at the
location.  Yesenia had several puncture
wounds to her chest.  The paramedics took
Yesenia to the hospital, where she was pronounced dead.

Dr. Mark Andrew Krause, the
deputy chief medical examiner, found eight cut and stab wounds on Yesenia=s chin, upper chest, hand, and leg and a number of bruises, some of
which appeared to be several days old. 
She also had an injury on her hand that Dr. Krause testified was
consistent with a defensive injury.  Dr.
Krause concluded that the wounds were caused by an object that had a sharp tip
and at least one sharp edge and that it was relatively flat, like a knife.  He ruled Yesenia=s death as a homicide and ruled out the possibility that her death was
a result of accident or suicide.

LEGAL AND FACTUAL SUFFICIENCY
OF THE EVIDENCE

In his first and second
issues, Appellant contends that the evidence is legally and factually
insufficient to support his conviction. 

 

 

 








1.  Standards of Review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  The standard of review is the same for direct
and circumstantial evidence cases.  Burden
v. State, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001); Kutzner v. State,
994 S.W.2d 180, 184 (Tex. Crim. App. 1999).








This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  The
trier of fact is the sole judge of the weight and credibility of the
evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the
evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The sufficiency of the
evidence should be measured by the elements of the offense as defined by the
hypothetically correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Ortiz v. State, 993 S.W.2d 892, 895 (Tex. App.CFort Worth 1999, no pet.).  Such
a charge would be one that accurately sets out the law, is authorized by the
indictment, does not unnecessarily restrict the State=s theories of liability, and adequately describes the particular
offense for which the defendant was tried. 
Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik,
953 S.W.2d at 240.  The law as
authorized by the indictment means the statutory elements of the charged
offense as modified by the charging instrument. 
See Curry, 30 S.W.3d at 404.








In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) when the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment and, weighing all of the evidence, the contrary evidence is so strong
that guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id.        In
performing a factual sufficiency review, we are to give deference to the fact
finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.

A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

 








2.  Applicable Law








Appellant was indicted under
penal code sections 19.02(b)(1) and 19.02(b)(2), and the jury was charged
accordingly.  The indictment alleged that
Appellant Aintentionally
or knowingly cause[d] the death of an individual, namely: Yesenia Ramirez, by
stabbing Yesenia Ramirez with a knife, a claw-like object, or an object unknown
to the Grand Jury.@[2]  The indictment further alleged
that Appellant, Awith intent
to cause serious bodily injury to an individual, namely Yesenia Ramirez,
commit[ted] an act clearly dangerous to human life; to-wit: stab Yesenia
Ramirez with a knife, a claw-like object, or an object unknown to the Grand
Jury that caused the death of said Yesenia Ramirez.@  Under penal code sections
19.02(b)(1) and 19.02(b)(2), a person commits the offense of murder when he either
(1) intentionally or knowingly causes the death of another or (2) intends to
cause serious bodily injury and commits an act clearly dangerous to human life
that causes the death of another.  Tex. Penal Code Ann. ' 19.02(b)(1), (2) (Vernon 2003). 
When the trial court's charge authorizes the jury to convict on several
different theories, the verdict of guilty will be upheld if the evidence is
sufficient on any one of the theories.  Swearingen
v. State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003).

3.  Sufficiency of the Evidence








Appellant asserts that, under
Ellis v. State,  mere presence
during the commission of the offense is not, by itself, sufficient evidence of
the person=s
participation in the crime.  See
551 S.W.2d 407, 412 (Tex. Crim. App. 1977). 
Although the mere presence of Appellant at the murder scene would not be
sufficient to show that he participated in the crime, additional evidence
connects him to the murder.  Michelle
testified that her brother, Luigi, heard her mother screaming.  She testified that she went upstairs where
she saw her father choking her mother and saw blood on the bedroom floor.  Appellant smashed Michelle=s finger in the door when he slammed the door closed and locked
it.  After the door was closed, Michelle
heard her mother=s screams
coming from inside the bedroom.  Michelle
testified that no other person was present in the house, and there was no evidence
to the contrary.  Michelle testified that
Appellant shoved her and her brother as he was leaving the house.      Randon Riley, Appellant=s neighbor, testified that he and Darrick Todd were in Riley=s garage when Appellant arrived home on the day of the homicide. Riley
testified that Appellant was home for approximately twenty minutes when
Appellant got into the truck and sped away. 
The fact that Appellant fled the scene indicates a consciousness of
guilt, which may be one of the strongest indicators of guilt.  See Bigby v. State, 892 S.W.2d 864, 884
(Tex. Crim. App. 1994) (noting that evidence of flight shows a consciousness of
guilt of the crime for which the defendant is on trial), cert. denied,
515 U.S. 1162 (1995); Lee v. State, 866 S.W.2d 298, 302 (Tex. App.CFort Worth 1993, pet. ref=d) (noting that a consciousness of guilt may be one of the strongest indicators
of guilt).  In fact, Appellant fled the
scene, and his whereabouts were unknown to police officers until he was
apprehended in New Mexico on September 3, 2003, nearly fourteen months
following the murder.








Riley further testified that
Michelle then came running out of the house saying, ADaddy killed mommy.@  Todd corroborated Riley=s testimony, testifying that he saw Appellant arrive in the family=s red truck and later speed away in the truck, squealing his
tires.  Todd testified that Michelle ran
up to him and  said, AMy mommy needs help; my daddy is trying to kill my mommy.@  Riley and Todd then told Mike
Gregory, a Flower Mound police officer who was the first to arrive on the
scene, that the victim=s husband
had left in a red Ford F-150 truck.  They
also informed him that the children had come running over telling them that
their father was trying to kill their mother. 
A bloody fingerprint that officers found at the house tied Appellant to
the murder because the fingerprint matched Appellant=s right thumb print.  Using
Hemaglow, a chemical that makes blood visible, officers found blood on the
steering wheel, dashboard, and ignition of the red pickup truck.

Mitchell Jobe, a Flower Mound
paramedic who arrived at the scene, observed several puncture wounds to Yesenia=s chest and noticed that there was blood everywhere.  Dr. Krause testified that Yesenia suffered
from eight cut and stab wounds, three of which were located in her upper chest
that were fairly deep wounds that would have bled profusely.  He testified that the combination of wounds
would have caused Yesenia=s death Ain short order.@ The jury
could rationally infer from this testimony that Yesenia was not injured prior
to the time Appellant arrived at the house.








Appellant also asserts that
the State failed to prove the elements of the crime of murder as defined in the
penal code because the State did not prove his culpable mental state.  However, the intent to kill may be inferred
from the nature of the injury inflicted and flight from the scene.  Wilkerson v. State, 881 S.W.2d 321, 324
(Tex. Crim. App.) (holding that the jury could infer intent to kill from the
manner in which the appellant handled his weapon, the amount of pressure needed
to fire the weapon, the distance from which he fired, the nature of the injury
he inflicted, and his flight from the scene), cert. denied, 513 U.S.
1060 (1994); Felder v. State, 848 S.W.2d 85, 90 (Tex. Crim. App. 1992)
(holding that intent to kill was apparent by the number and location of the
stab wounds inflicted upon the deceased), cert. denied, 510 U.S. 829
(1993); Wilson v. State, 948 S.W.2d 21, 24 (Tex. App.CEastland 1997, pet. ref=d) (holding that the intent to kill can be inferred from the nature of
the injury inflicted and flight from the scene).

Yesenia also sustained eight
puncture wounds, which leads to a rational conclusion that the injuries were
not accidentally inflicted.  Furthermore,
Appellant fled the scene, and his whereabouts were unknown to police officers
until he was apprehended in New Mexico on September 3, 2003, nearly fourteen
months following Yesenia=s murder.

We hold that the evidence,
when viewed in the light most favorable to the verdict, supports the jury
verdict beyond a reasonable doubt; therefore, we overrule Appellant=s first issue.  Additionally,
when viewed neutrally, the evidence is not so obviously weak or so greatly
outweighed by contrary proof that it would not support the finding of guilty
beyond a reasonable doubt.  Accordingly,
we overrule Appellant=s second
issue.

HEARSAY








In his third issue, Appellant
contends that the trial court erred in admitting  hearsay evidence that he was in Mexico.  The State asserts that the statement
concerning Appellant=s possible
presence in Mexico was not hearsay because it was not offered to prove that
Appellant might have been in Mexico, but rather to show why the police asked
the immigration service for assistance in searching for Appellant.

We review a trial court=s admission or exclusion of evidence for an abuse of discretion.  Rankin v. State, 974 S.W.2d 707, 718
(Tex. Crim. App. 1996) (op. on reh=g); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1991) (op. on reh=g).  A trial court does not abuse its discretion,
and we will not reverse a trial court=s ruling, unless the ruling falls outside the zone of reasonable
disagreement.  Rankin, 974 S.W.2d
at 718.  A trial court abuses its
discretion when it acts without reference to any guiding rules and principles
or acts arbitrarily or unreasonably.  Montgomery,
810 S.W.2d at 380.








Hearsay is a statement, other
than one made by the declarant while testifying at trial, offered into evidence
to prove the truth of the matter asserted. 
Tex. R. Evid. 801(d).  A statement not offered to prove the truth of
the matter asserted is not hearsay.  See
id.; Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App.), cert.
denied, 516 U.S. 832 (1995); Davis v. State, 169 S.W.3d 673, 675-76
(Tex. App.CFort Worth
2005, no pet.) (allowing a police officer to testify about an anonymous tip
received for the purpose of establishing how the appellant was developed as a
suspect).  Where a police officer=s testimony is admitted not for the truth but to establish the course
of events and circumstances leading to the arrest of the defendant, it is not
hearsay.  Reed v. State, 794
S.W.2d 806, 809 (Tex. App.CHouston [14th Dist.] 1990, writ ref=d), cert. denied, 500 U.S. 918 (1991).

Appellant complains about a
statement made by Officer Sparby that the police had received information that
he was in Mexico.  The detective
testified that about a month after the murder, all of the leads for Appellant
had been exhausted; however, the search for Appellant continued.  The record reflects that the prosecutor
elicited the following testimony:

Q.     The leads were dwindling, and you were doing a lot of follow-up.

 

A.     Yes.

 

Q.     Did you enlist the help of any other type of law enforcement
agency?

 

A.     Yes, ma=am. 

 

Q.     And who did you askB

 

A.     The B
sorry.  The U.S. Marshal Service and INS,
which is now ICE.

 

Q.     INS is what?

 

A.     Immigration services.

 

Q.     And why did you think they may be able to help you?

 

A.     Because I had received information that the likelihood of Mr.
Ramirez being in Mexico.

 








MR.
READ [Defense Counsel]: I=m
going to object to hearsay, your Honor. 
She had to receive information from somewhere.  If she did, it=s
hearsay.

 

THE
COURT: I=m
going to overrule the objection

 

MR.
READ: Note my exception.

 

Q.     [Prosecutor] Okay.  You
received information about what?

 

A.     That he was possibly in Mexico. 

 

Q.     And that=s why
you enlisted which of those two services? 

 

A.     INS.

Here, it is clear that the
State solicited the testimony that Appellant was possibly in Mexico in order to
establish why the officers sought the assistance of the INS.  The testimony was not solicited in order to
prove the truth of whether Appellant was in fact in Mexico.  Because the testimony was not solicited to
prove the truth of the matter asserted, it was not hearsay.  Dinkins, 894 S.W.2d at 347‑48.  Thus, the trial court did not abuse its
discretion in permitting the officer to testify as to why the assistance of the
INS was sought in locating Appellant. 
Accordingly, we overrule Appellant=s third issue.

 

 

 

 








CONCLUSION

Having overruled Appellant=s three issues, we affirm the trial court=s judgment.

 

DIXON W. HOLMAN

JUSTICE

 

PANEL
B:  LIVINGSTON, DAUPHINOT and HOLMAN, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  April 27, 2006











[1]See Tex. R. App. P. 47.4.





[2]The
foreman of the grand jury that returned the indictment against Appellant
testified that despite a proper inquiry, the grand jury was unable to determine
what specific type of instrument caused the fatal injuries to Yesenia.